**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JONATHAN ASHLEY
580 Massie Rd.
Charlottesville, VA 22903

      Plaintiff,

    v.                              Civil Action No.  cv:14-1928

U.S. DEPARTMENT OF JUSTICE
Pennsylvania Avenue, N.W.
Washington, D.C. 20530

      Defendant.

_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief.  Plaintiff seeks the release of thirty non-prosecution agreements ("NPAs") and/or deferred prosecution agreements ("DPAs") from Defendant Department of Justice ("DOJ") and its component, the Executive Office for United States Attorneys ("EOUSA").  Certain United States Attorney's Offices and/or compartments of the Department of Justice ("DOJ") entered into the NPAs and DPAs in question between 1992 and 2013.  Plaintiff is statutorily entitled to the disclosure of the NPAs and DPAs, and Defendant has improperly withheld the requested records in violation of the law and in opposition to the strong public interest in understanding the judicial system and why admitted wrongdoers are not criminally prosecuted.

## Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over this matter and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

3.      Plaintiff Jonathan Ashley is a librarian at the University of Virginia School of Law ("Law School").  Specifically, Ashley is a business reference librarian conducting research on behalf of Brandon L. Garrett.  Garrett is a professor of law engaged in scholarship regarding the criminal justice system.  Garrett's scholarship seeks to make an academic contribution to the legal field and public discourse by examining important facets of the criminal justice system and by providing access to important sources of information to journalists, the general public, and scholars engaged in legal research.

4.      Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702.  The EOUSA is the specific component of the DOJ that is the official record keeper for the United States Attorney's Offices.

## FACTUAL ALLEGATIONS

### Background

5.      In the aftermath of the DOJ's decision to forego prosecution and enter into NPAs and DPAs with several major corporations since the early 1990s, Garrett published a 2007 *Virginia Law Review* article analyzing the terms of these agreements, the lack of judicial review, and the potential for prosecutorial abuse.[1]  Garrett is not alone in his scholarly interest in

---

[1] Brandon L. Garrett, *Structural Reform Prosecution*, 93 Vᴀ. L. Rev. 853 (2007).

corporate prosecutions.  New York University School of Law has an entire program—the

Program on Corporate Compliance and Enforcement—dedicated to researching corporate

criminal law, directed by leading corporate liability professor Jennifer Arlen.[2]  Given the public

importance of many federal prosecutions of organizations, Garrett and Ashley created an online

resource hosted by the Law School library housing an extensive collection of federal corporate

prosecution agreements.[3]

6.      As of the filing of this Complaint, there were approximately 315 NPAs and DPAs

already available on Garrett and Ashley's website.[4]  This collection of NPAs and DPAs makes

available to the public critical documents that shed light on why the DOJ would decide not to

pursue criminal charges against admitted wrongdoers.  In November 2014, Harvard University

Press published a book authored by Garrett entitled *Too Big to Jail – How Prosecutors

Compromise with Corporations*.  Among other things, Garrett's book analyzes publicly available

data about corporate prosecutions.  The public has a right of access to such documents as the

debate concerning NPAs and DPAs continues.

7.      Interest in these agreements is not limited to academic circles.  Concern over their

use can also be found in popular media sources.  In 2012, Peter J. Henning of *The New York

Times DealBook* referred to DPAs and NPAs as approaching "cookie-cutter justice in corporate

criminal investigations," where "[e]veryone by now knows the drill: turn over the results of an

internal investigation, highlight how damaging a conviction would be and then offer to pay the

fine and put in place an enhanced compliance program.  The press release almost writes itself,

---

[2] Areas of Study, Criminal Law, *available at* http://www.law.nyu.edu/academics/areasofstudy/criminal/curriculum.
[3] Brandon L. Garrett and Jon Ashley*, Federal Organizational Prosecution Agreements, University of Virginia School of Law*, *available at* http://lib.law.virginia.edu/Garrett/prosecution_agreements/home.suphp.
[4] *Id*.

but it is the rare case in which senior management pays any price."[5]   A few months later, *The New York Times* published an editorial harshly criticizing the DOJ's decision to enter into a DPA with a major British bank: "[c]learly, the government has bought into the notion that too big to fail is too big to jail. When prosecutors choose not to prosecute to the full extent of the law in a case as egregious as this, the law itself is diminished."[6]

8.      Courts have been skeptical of both NPAs and DPAs, and there is increasing concern that NPAs provide a run-around the judicial process since courts have little say in whether a prosecutor can bring charges or not.[7]   While reporting on United States District Judge John Gleeson's recent criticism of DPAs in the Eastern District of New York, *Forbes* contributor Jonathan Sack noted that "scrutiny of DPAs could encourage the government to enter non-prosecution agreements (NPAs) in lieu of DPAs, for, as Judge Gleeson observed, judicial supervision does not apply to non-prosecution agreements; the government has virtually unfettered discretion to choose not to charge at all."[8] As recently as July 21, 2014, Garrett was appointed by Judge Emmet G. Sullivan of the United States District Court for the District of Columbia to appear as *amicus curiae* in *United States of America v Saena Tech Corporation* "for the limited purpose of providing the Court with advocacy on questions regarding the scope of the Court's authority, if any, to consider the fairness and reasonableness of a deferred prosecution in deciding whether to accept or reject such an agreement."[9]

---

[5] Peter J. Henning, *Deferred Prosecution Agreements and Cookie-Cutter Justice,* N.Y. TIMES DEAL BOOK (September 17, 2012), *available at* http://dealbook.nytimes.com/2012/09/17/deferredprosecution-agreements-and-cookie-cutter-justice/.
[6] Editorial, *Too Big to Indict*, N.Y. TIMES (Dec. 11, 2012) http://www.nytimes.com/2012/12/12/opinion/hsbc-too-big-to-indict.html?_r=0.
[7] Jonathan Sack, *A Plant Grows in Brooklyn: EDNY Judge Scrutinizes Deferred Prosecution Deal*, FORBES (July 31, 2013) http://www.forbes.com/sites/insider/2013/07/31/a-plant-grows-inbrooklyn-edny-judge-scrutinizes-deferred-prosecution-deal/.
[8] *Id.*
[9] Order of United States District Judge Emmet G. Sullian in *United States of America v Saena Tech Corporation* dated July 21, 2014: Docket Criminal No. 14-66 (EGS).  Garrett's *amicus* brief was filed on August 22, 2014 and is

9.      NPAs and DPAs have also been the subject of congressional scrutiny, with members of Congress questioning Mythili Raman, the former Acting Assistant Attorney General of the DOJ's Criminal Division on the merits of such agreements.[10]  According to the DOJ's Principles of Federal Prosecution, USAM Chapter 9-27.600, a U.S. Attorney can "enter into a non-prosecution agreement in exchange for a person's cooperation when, in his/her judgment, the person's timely cooperation appears to be necessary to the public interest and other means of obtaining the desired cooperation are unavailable or would not be effective."[11]  At a congressional hearing before the House Subcommittee on Oversight and Investigations of the Committee on Financial Services, Missouri Representative Emanuel Cleaver posited to Raman the following public sentiment on the DOJ's decision to impose fines versus going to trial: "I think there is a general view out in the world from which I come that the banks are now larger than they were when the economic crisis began.  And that they are simply fined when they are caught in violation of the law.  Then, when we hear that none of the Wall Street culprits have gone to trial, it contributes to this feeling out here that if you have money, you can get off."[12]

10.      Garrett and Ashley's database provides the public a meaningful opportunity to scrutinize the terms of these agreements.  Further, disclosure is in the government's interest since public availability will dispel any myths or false allegations regarding their content.  As stated earlier, there are over two hundred NPAs and DPAs already publicly available, which weighs

---

*available at*
http://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&ved=0CB4QFjAA&url=http%3A%2F%2Fblogs.reuters.com%2Falison-frankel%2Ffiles%2F2014%2F08%2Fusvsaena-garrettamicus.pdf&ei=g_lbVPD3DMflsATRj4L4DA&usg=AFQjCNE5EbgWDoQeHKpLJq3fbIAsJkIMBQ&bvm=bv.78677474,bs.1,d.aWw.

[10] *Who Is Too Big to Fail: Are Large Financial Institutions Immune from Federal Prosecution?: Hearing Before the H. Subcomm. on Oversight and Investigations of the H. Comm. on Financial Servs.*, 113th Cong. (2013) (statement of Mythili Raman, Acting Assistant Att'y Gen. of the Department of Justice Criminal Division). *Available at* http://financialservices.house.gov/uploadedfiles/113-25.pdf.
[11] *Available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/27mcrm.htm#9-27.600.
[12] *Id* at 9.

against the position that the NPAs and DPAs sought by Ashley somehow fall under a FOIA exemption.

## Non-Prosecution Agreements and Deferred Prosecution Agreements Relevant to Plaintiff's FOIA Request

11.   **Accustar Watch Co. Inc.**

On June 29, 2001, the United States Attorney for the Southern District of New York filed a complaint against Accustar Watch Co. Inc. in the U.S. District Court for the Southern District of New York alleging violation of 18 U.S.C. § 2320 for trafficking in goods and knowingly using counterfeit marks on and in connection with such goods.[13]   On July 2, 2001, the parties entered into a DPA for a period of eighteen months.   On January 2, 2003, the complaint against Accustar Watch Co. Inc. was dismissed.

12.   **Advanced Containment Systems Inc.**

On January 24, 2012, it was reported that Atrium Corp., the owner of Advanced Containment Systems, Inc., entered into an NPA with the United States Attorney for the Southern District of Texas pursuant to which Advanced Containment Systems Inc. agreed to adhere to a revised immigration compliance program and pay $2 million as forfeited funds to the Department of Homeland Security arising from alleged breaches of labor law.[14]

---

[13] *USA v Accustar Watch Co. Ltd et al.*, Docket Number 1:01-mj-01235.
[14] U.S. Attorney's Office for the Southern District of Texas, Department of Justice, *Two Companies Admit to Hiring Illegal Aliens, Each Forfeit $2 Million,* January 24, 2012,
http://www.justice.gov/usao/txs/1News/Releases/2012/2012%20January/120124%20Atrium%20Companies_print.html.

13.    **Atrium Corp.**

As referred to above in paragraph 12, on January 24, 2012, it was reported that Atrium Corp., the owner of Advanced Containment Systems, Inc. and Champion Window, entered into an NPA with the United States Attorney for the Southern District of Texas pursuant to which Advanced Containment Systems Inc. and Champion Window each agreed to adhere to a revised immigration compliance program and pay $2 million as forfeited funds to the Department of Homeland Security arising from alleged breaches of labor law.[15]

14.    **Advanced Cosmetics Research Labs**

Advanced Cosmetics Research Labs and the U.S. Attorney's Office for the Central District of California entered into an NPA in October of 2008.  The case was included in a list provided to Garrett and Ashley by the Government Accountability Office ("GAO") in response to a request for a list of DPAs and NPAs collected in support of a 2009 report by the Government Accountability Office entitled *Corporate Crime: DOJ has Taken Steps to Better Track its Use of Deferred and Non-Prosecution Agreements, but Should Evaluate Effectiveness* ("GAO Report").[16]

15.    **Aspen Square Management**

It was reported that on August 6, 2010, Aspen Square Management entered into an NPA pursuant to which Aspen Square Management was required to make a $730,000 donation to the St. Joseph Health System in the Oscoda, Michigan

---

[15] Department of Justice, *supra* note 14.
[16] Corporate Crime: DOJ has Taken Steps to Better Track its Use of Deferred and Non-Prosecution Agreements, but Should Evaluate Effectiveness (GAO-10-110, Dec. 18, 2009).

community and to provide medical monitoring for a period of ten years for specified employees and contractors who were potentially exposed to asbestos.  It was alleged that Aspen Square Management failed to notify the state or follow asbestos work practice standards with respect to renovations of housing units at the former Wurtsmith Air Force Base in Oscodo, Michigan.[17]

16. **C.R. Bard, Inc.**

On May 13, 2013, it was reported that C.R. Bard, Inc. entered into an NPA with the U.S. Attorney for the Northern District of Georgia pursuant to which it agreed to pay $48.26 million and take numerous remedial steps to resolve claims that it knowingly caused false claims to be submitted to the Medicare program for brachytherapy seeds used to treat prostate cancer in violation of the False Claims Act.[18]

17. **CareFusion Corp.**

On April 26, 2013, it was reported that CareFusion Corp. entered into an NPA and agreed to pay the U.S. Government approximately $41 million to resolve an investigation relating to CareFusion Corp.'s sales and marketing practices for its ChloraPrep skin preparation product.[19]

18. **ConAgra Poultry Co.**

---

[17] Environmental Protection Agency, Criminal Enforcement Case Highlights – Fiscal Year 2009, http://www.epa.gov/compliance/resources/reports/endofyear/eoy2010/criminalenfall.html.
[18] Department of Justice, *C.R. Bard Inc. to Pay U.S. $48.26 Million to Resolve False Claims Act Claims,* May 13, 2013, http://www.justice.gov/opa/pr/cr-bard-inc-pay-us-4826-million-resolve-false-claims-act-claims.
[19] Meghana Keshavan, *CareFusion to Pay $41M,* SAN DIEGO BUSINESS J., April 26, 2013, http://sdbj.com/news/2013/apr/26/carefusion-pay-41m/.

In 1998, ConAgra Poultry Co. paid $223,000 to settle an allegation that the company hired illegal aliens at its former Glasgow plant.[20] The settlement included a $123,000 civil fine and a $100,000 payment toward investigation and prosecution costs.  The case originated when the INS removed twenty-four illegal aliens from the plant in 1996, and the settlement came on the heels of guilty pleas by a plant manager, personnel manager, payroll manager, and line supervisor.[21] These employees pleaded guilty to various charges, including harboring illegal aliens and providing false documents."[22]  The case was included in a list provided to Garrett and Ashley by the GAO in response to a request for a list of DPAs and NPAs collected in support of the GAO Report.

19.     **Coopers & Lybrand**

In 1996, Coopers & Lybrand entered into a two-year NPA to resolve allegations of using inside information to bid for a state contract. In addition to restitution, the firm agreed to retain independent counsel to monitor compliance."[23]  The case was included in a list provided to Garrett and Ashley by the GAO in response to a request for a list of DPAs and NPAs collected in support of the GAO Report.

20.     **Cosmetics Laboratories of America**

---

[20] *ConAgra Poultry Will Pay U.S. $223,000*, LOUISVILLE COURIER-J., Apr. 21, 1998, at B6.
[21] *Id.*
[22] Thomas C. Green & Ileana M. Ciobanu, *Deputizing—and then Prosecuting—America's Businesses in the Fight Against Illegal Immigration*, 43 AM CRIM. L. REV. 1203, 1211 note 37 (2006).
[23] Press Release, U.S. Att'y's Off., C.D. Cal., *Coopers & Lybrand Agrees to Settlement in Government Investigation of Arizona Governor and Bid-Rigging of State Contract* (Sept. 19, 1996). See, Christopher A. Wray & Robert K. Hur, *Corporate Criminal Prosecution*, 43 AM. CRIM. L. REV. 1095, 1104.

Cosmetics Laboratories of America and the U.S. Attorney's Office for the Central

District of California entered into an NPA in June of 2008.  The case was

included in a list provided to Garrett and Ashley by the GAO in response to a

request for a list of DPAs and NPAs collected in support of the GAO Report.

21.     **Edward Jones & Co.**

Edward Jones & Co. agreed in December of 2004 to settle charges brought by the

SEC that it funneled investors to mutual funds from which it received multi-

million dollar compensation without disclosing the conflict of interest to

investors.[24]  The case was included in a list provided to Garrett and Ashley by the

GAO in response to a request for a list of DPAs and NPAs collected in support of

the GAO Report.

22.     **Facility Group**

Facility Group and the U.S. Attorney's Office for the Northern District of

Mississippi entered into an NPA in August of 2008.  The case was included in a

list provided to Garrett and Ashley by the GAO in response to a request for a list

of DPAs and NPAs collected in support of the GAO Report.

23.     **Frosty Treats, Inc.**

On September 10, 2007, it was reported that Frosty Treats, Inc. entered into an

NPA with the U.S. Attorney for the Western District of Missouri pursuant to

which it agreed to pay more than $47,555 to six foreign student workers who

were recruited in a summer work program.  The company helped the students

---

[24] Laura Johannes, John Hechinger, and Deborah Soloman, "Edward Jones Agrees to Settle Host of Charges." The Wall Street Journal, December 21, 2004
http://online.wsj.com/news/articles/SB110356207980304862.

apply for Social Security Cards, which would enable them to apply for jobs other

than the one at Frosty Treats, but withheld the mail containing the cards from the

students when those cards were issued. The company agreed to cease operating

the program for two years and to seek prior approval from the U.S. Attorney's

Office before resuming the program.[25] The case was included in a list provided to

Garrett and Ashley by the GAO in response to a request for a list of DPAs and

NPAs collected in support of the GAO Report.

24. **Holy Spirit Association for the Unification of World Christianity**

On February 12, 2007, it was reported that Holy Spirit Association for the

Unification of World Christianity entered into an NPA pursuant to which Holy

Spirit Association agreed to pay $500,000 for wildlife restoration and

rehabilitation in the San Francisco Bay area arising from an operation that

poached thousands of California leopard sharks over a period of more than ten

years.[26] The case was included in a list provided to Garrett and Ashley by the

GAO in response to a request for a list of DPAs and NPAs collected in support of

the GAO Report.

25. **HSBC**

HSBC and the U.S. Attorney's Office for the Southern District of New York

entered into an NPA in December of 2001. The case was included in a list

---

[25] U.S. Attorney for the Western District of Missouri, Department of Justice, Press Release, 'Frosty Treats Agrees to Pay $47,555 to Foreign Student Workers', September 10, 2007, http://www.justice.gov/usao/mow/news2007/carslake.ple.htm.
[26] U.S. Attorney for the Northern District of California, Department of Justice, Press Release, '$1.5 million partnership formed to rehabilitate and restore leopard shark habitat in San Francisco Bay', February 12, 2007, http://web.archive.org/web/20070218214822/http://www.justice.gov/usao/can/press/2007/2007_02_12_leopardshar ks.sentencing.press.html.

provided to Garrett and Ashley by the GAO in response to a request for a list of DPAs and NPAs collected in support of the GAO Report.

26. **IMC Potash**

IMC Potash and the U.S. Attorney's Office for the District of New Mexico entered into an NPA in September of 2002.  The case was included in a list provided to Garrett and Ashley by the GAO in response to a request for a list of DPAs and NPAs collected in support of the GAO Report.

27. **Levlad LLC**

Levlad LLC was charged with one count of storage of hazardous waste without a permit on May 14, 2008.  The last order in the case docket constituted an order granting a stipulation to continue post-indictment arraignment.[27]  Levlad and the U.S. Attorney's Office for the Central District of California entered into an NPA in October of 2008.  The case was included in a list provided to Garrett and Ashley by the GAO in response to a request for a list of DPAs and NPAs collected in support of the GAO Report.

28. **McSha Properties**

Officers of McSha Properties were criminally charged and convicted of money laundering.[28]  McSha Properties and the U.S. Attorney's Office for the Western District of Oklahoma entered into a non-prosecution agreement in January of 2009.  The case was included in a list provided to Garrett and Ashley by the GAO

---

[27] *USA v. Levlad, Inc. Docket No. 2:08-cr-00577 (C.D. Cal. May 14, 2008).*

[28] U.S. Attorney's Office (W.D. Okla.), *Two Former Officers of McSha Properties are Sentenced to Prison*, (December 15, 2011) *available at* http://www.fbi.gov/oklahomacity/press-releases/2011/two-former-officers-of-mcsha-properties-are-sentenced-to-prison; U.S. Attorney's Office (W.D. Okla.), *Three Former Officers of McSha Properties Indicted for Conspiracy, Fraud, and Money Laundering* (May 21, 2009) *available at* http://www.fbi.gov/oklahomacity/press-releases/2009/oc052109.htm.

in response to a request for a list of DPAs and NPAs collected in support of the
GAO Report.

29. **Medicis Pharmaceutical**

Medicis Pharmaceutical, a pharmaceutical company located in Scottsdale
Arizona, paid $9.8 million to resolve allegations that it falsely marketed Loprox
for use in patients under 10 years old.  Loprox is a topical fungicide approved by
the FDA for use in patients over 10, but not in patients under ten years old.
Allegedly, Medicis marketed the product to pediatricians as a treatment for diaper
rash.[29]  Medicis and the U.S. Attorney's Office for the District of Kansas entered
into an NPA in October of 2006.  The case was included in a list provided to
Garrett and Ashley by the GAO in response to a request for a list of DPAs and
NPAs collected in support of the GAO Report.

30. **Monfort Food Distribution Co.**

In August of 1999, the U.S. Department of Agriculture began investigating
Monfort and its parent company ConAgra Foods for allegedly changing the
grading certificates on beef shipments from "no grade" to "choice" grade.[30]
Monfort and the U.S. Attorney's Office for the Eastern District of Arkansas
entered into an NPA in February of 2000.  The case was included in a list
provided to Garrett and Ashley by the GAO in response to a request for a list of
DPAs and NPAs collected in support of the GAO Report.

31. **National Compressor**

---

[29] Department of Justice, *Medicis Pharmaceutical to Pay U.S. $9.8 Million to Resolve False Claims Allegations*, (May 8, 2007) *available at* http://www.justice.gov/archive/opa/pr/2007/May/07_civ_336.html.
[30] The Bureau of National Affairs. *USDA Conducting High Priority Investigation of ConAgra/Monfort* (August 2, 1999), Bloomberg Law.

National Compressor Exchange served as a defense contractor supplying air conditioning, heating, compressor, and motor parts.  It was contractually required to provide parts of specified manufacturers, but failed to do so in sixteen purchase orders ($15,797.55).  The government filed suit under the False Claims Act on October 27, 2008, seeking treble damages and civil penalties.  The case was dismissed at the government's request on December 22, 2008.[31]  The case was included in a list provided to Garrett and Ashley by the GAO in response to a request for a list of DPAs and NPAs collected in support of the GAO Report.

32.    **Quest Diagnostics Inc.**

On April 15, 2009, it was reported that Quest Diagnostics Inc. entered into an NPA with the U.S. Attorney for the Eastern District of New York pursuant to which Quest Diagnostics Inc. agreed to pay $302 million to resolve allegations arising from the manufacture, marketing and sale of diagnostic test kits.[32]  The case was included in a list provided to Garrett and Ashley by the GAO in response to a request for a list of DPAs and NPAs collected in support of the GAO Report.

33.    **RFK Institute**

The RFK Institute and the U.S. Attorney's Office for the Central District of California entered into an NPA in November of 2008.  The case was included in a

---

[31] *United States of America v. National Compressor Exchange, Inc. SD OH, Docket no. 2:08-cv-01011-JDH-NMK.*
[32] U.S. Attorney for the Eastern District of New York, Department of Justice, Press Release, *Quest Diagnostics to pay U.S. $302 million to resolve allegations that a subsidiary sold misbranded test kits* (April 15, 2009) *available at* http://www.justice.gov/opa/pr/quest-diagnostics-pay-us-302-million-resolve-allegations-subsidiary-sold-misbranded-test-kits.

list provided to Garrett and Ashley by the GAO in response to a request for a list

of DPAs and NPAs collected in support of the GAO Report.

34. **Roman Catholic Archbishop of Boston**

The Roman Catholic Archbishop of Boston and the U.S. Attorney's Office for the

District of Massachusetts entered into an NPA in November of 2005.  The case

was included in a list provided to Garrett and Ashley by the GAO in response to a

request for a list of DPAs and NPAs collected in support of the GAO Report.

35. **Salomon Brothers, Inc.**

On September 14, 1992, it was reported that Salomon Brothers, Inc., entered into

an NPA with the U.S. Attorney for the Southern District of New York pursuant to

which Salomon Brothers agreed to pay the U.S. Government $27.8 million in

relation to alleged violation of antitrust laws.[33]

36. **Sequa Corp.**

On June 24, 1993, it was reported that Sequa Corp. entered into an NPA with the

U.S. Attorney for the Southern District of New York arising from Sequa Corp.'s

alleged fraud in the manufacture and repair of airplane engine parts.[34]  Sequa

Corp. agreed to pay $5 million for scientific testing and expert analysis of

airplane parts.

37. **Swift Beef**

---

[33] U.S Attorney for the Southern District of New York, Department of Justice, Press Release, *Judge approves $27.8 million Justice Department antitrust settlement with Salomon Brothers, largest civil antitrust penalty* (September 14, 1992) *available at* http://www.justice.gov/atr/public/press_releases/1992/211290.htm.

[34] U.S. Attorney for the Southern District of New York, Department of Justice, Press Release, *Announcement of Decision Not to Prosecute Sequa Corporation* (June 24, 1993) cited in Sharon Oded, *Deferred Prosecution Agreements: Prosecutorial Balance in Times of Economic Meltdown*, 2 L. J. FOR SOC. JUST. 65, 72 note 27 (2011).

Swift Beef and the U.S. Attorney's Office for the Northern District of Iowa

entered into an NPA in October of 2002.  The case was included in a list provided

to Garrett and Ashley by the GAO in response to a request for a list of DPAs and

NPAs collected in support of the GAO Report.

38.     **Trace America**

Trace America and the U.S. Attorney's Office for the Eastern District of New

York entered into an NPA in September of 2009.  The case was included in a list

provided to Garrett and Ashley by the GAO in response to a request for a list of

DPAs and NPAs collected in support of the GAO Report.

39.     **Unum Group**

Unum Group, a disability insurer, failed to report special fees paid to an insurance

broker between 2000 and 2004, who in turn charged insured individuals higher

premiums.  Unum Group agreed to pay $5.5 million in fines as part of an

agreement to cooperate.[35]  Unum and the U.S. Attorney's Office for the Southern

District of California entered into an NPA in June of 2008.  The case was

included in a list provided to Garrett and Ashley by the GAO in response to a

request for a list of DPAs and NPAs collected in support of the GAO Report.


**Plaintiff's FOIA Request**

40.     On April 2, 2014, Ashley submitted, via U.S. Mail and email, a FOIA request to

the Office of Information Policy at the DOJ for NPAs and DPAs related to the companies listed

---

[35] *UNUM Group Agrees to Pay Fines and Penalties of $5.5 million for Secret Fee Payments,* Health Plan Law (June 24, 2008) *available at* http://www.healthplanlaw.com/?p=653.

in paragraphs 11–39 above.  A true and correct copy of this request is attached hereto as Exhibit

1, and is incorporated by reference herein.

41.     Specifically, Ashley requested "access to and copies of non-prosecution and

deferred-prosecution agreements" between the Department of Justice and Accustar Watch Co.,

Advanced Containment Systems Inc., Advanced Cosmetics Research Labs, Aspen Square

Management, Atrium Corp., C.R. Bard, Inc., CareFusion Corp., ConAgra Poultry Co., Coopers

& Lybrand, Cosmetics Laboratories of America, Edward D. Jones, Facility Group, Frosty Treats

Inc., Holy Spirit Association, HSBC, IMC Potash, Levlad LLC, McSha Properties, Medicis,

Monford Food Distribution Co., National Compressor, Quest Diagnostics, RFK Institute, Roman

Catholic Archbishop of Boston, Salomon Brothers, Sequa, Swift Beef, Trace America, and

Unum Group.

42.     Ashley sought a fee benefit as a member of an educational institution, the

University of Virginia School of Law, under 552 U.S.C. § 552(a)(4)(A)(ii)(II).

43.     Ashley further sought a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) because

"disclosure of the information contained in the requested documents would serve the public

interest."  Ashley stated that the records sought in his request would help "provide a resource for

scholarly research concerning federal prosecution of organizations."

**Defendant's Treatment of Plaintiff's FOIA Request**

44.     By letter dated April 24, 2014, the Office of Information Policy at the DOJ

acknowledged Ashley's FOIA request and stated that as the request sought records from the

Executive Office for United States Attorneys, the request had been forwarded to the

FOIA/Privacy Unit of the Executive Office for United States Attorneys at the DOJ.  A true and

correct copy of this letter is attached hereto as Exhibit 2, and is incorporated by reference herein.

45.     To date, Ashley has not received any communication from the EOUSA.

46.     On September 16, 2014, Ashley sent a follow up letter by U.S. Mail and email to the FOIA/Privacy Unit of the EOUSA.  The letter sought a clarification of the status of Ashley's FOIA request, and reiterated the records sought in full.  In his letter, Ashley also reiterated his requests for a fee benefit and a fee waiver.   A true and correct copy of this letter is attached hereto as Exhibit 3.

47.     To date, Ashley has received no further communications from the DOJ Office of Information Policy, and no communications from the Executive Office for United States Attorneys.

**Ashley has Constructively Exhausted His Administrative Remedies**

48.     More than seven months have elapsed since Ashley's FOIA request was submitted to the DOJ.

49.     The DOJ has failed to make a determination regarding Ashley's FOIA request within the twenty-day time period set forth in 5 U.S.C. § 556(a)(6)(A)(i).

50.     The DOJ's failure to respond within the twenty-day statutory limit constitutes a constructive denial of Ashley's request.

## CAUSES OF ACTION

### Count I
**Violation of the Freedom of Information Act: Failure to Comply with Statutory Deadlines**

51.     Plaintiff repeats and re-alleges paragraphs 1–50 above.

52.     Plaintiff properly asked for records within the custody and control of Defendant.

53.     Plaintiff has exhausted the applicable administrative remedies with respect to his request.  5 U.S.C. § 552(a)(6)(C)(i).

54.     Defendant DOJ failed to make a determination regarding Plaintiff's FOIA request, which violated the statutory deadline imposed by FOIA.  5 U.S.C. § 556(a)(6)(A).

**Count II**
**Violation of the Freedom of Information Act: Wrongful Withholding of Agency Records**

55.     Plaintiff repeats and re-alleges paragraphs 1–50 above.

56.     Plaintiff properly asked for records within the custody and control of Defendant.

57.     Defendant DOJ has failed to make responsive records available to Plaintiff, in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).  Plaintiff has exhausted the applicable administrative remedies with respect to his request.  5 U.S.C. § 552(a)(6)(C)(i).

**Count III**
**Violation of the Freedom of Information Act: Failure to Grant Educational Fee Status**

58.     Plaintiff repeats and re-alleges paragraphs 1–50 above.

59.     In his request, Plaintiff set forth facts supporting a determination that he was entitled to educational fee status.

60.     Defendant failed to make a determination with regards to Plaintiff's educational fee status, in violation of FOIA.  5 U.S.C. § 552(a)(4).

61.     Plaintiff has exhausted the applicable administrative remedies with respect to his fee status determination.  5 U.S.C. § 552(a)(6)(C)(i).

**Count IV**
**Violation of the Freedom of Information Act: Failure to Grant Fee Waiver**

62.     Plaintiff repeats and re-alleges paragraphs 1–50 above.

63.     In his request, Plaintiff set forth facts supporting a determination that he was entitled to a fee waiver.

64.     Defendant failed to make a determination with regards to Plaintiff's request for a fee waiver, in violation of FOIA.  5 U.S.C. § 552(a)(4).

65.     Plaintiff has constructively exhausted administrative remedies with respond to his fee waiver determination.  5 U.S.C. § 552(a)(6)(C)(i).

**Requested Relief**

WHEREFORE, Plaintiff respectfully requests this Court:

1) order Defendant DOJ and its component, EOUSA, to conduct a reasonable search for all responsive records to Plaintiff's April 2, 2014 FOIA request, and to immediately disclose all non-exempt records responsive to Plaintiff's FOIA request in their entirety;

2) order Defendant to produce a *Vaughn* index identifying any document or portion of a document withheld and stating the statutory exemption claimed;

3) issue a declaration that Plaintiff is entitled to disclosure of the requested records;

4) issue a declaration that Plaintiff is entitled to educational fee status;

5) issue a declaration that Plaintiff is entitled to a fee waiver;

6) provide for expeditious proceedings in this action;

7) award Plaintiff reasonable attorney fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

8) grant such other relief as the Court may deem just and proper.

///

///

///

///

///

Dated: November 17, 2014

Respectfully submitted,

s/J. Joshua Wheeler
J. Joshua Wheeler
DC Bar No. 451167
First Amendment Clinic

University of Virginia School of Law
The Thomas Jefferson Center for the
Protection of Free Expression
400 Worrell Drive
Charlottesville, VA 22911
Telephone: (434) 295-4784
Facsimile: (434) 296-3621

*Counsel for Plaintiff Jonathan Ashley*